Nott, J.,
delivered the opinion of the court:
The Land Grant Act 5th May, 1864 (13 Stat. L., p. 66, sec. 3) provides that the lands thereby granted to the State of Wisconsin, “for the purpose of aiding in the construction of a railroad” in that State, are granted “upon the same terms and conditions as are contained in the act grmting lands to said State to aid in the construction of railroads in said State, approved June 3, 1856.” (11 Stat. L., p. 20.)
That act contained this provision :
“That the United States mail shall be transported over said roads, under the direction of the Post-Office Department, at such prices as Congress may by law direct: Provided, That until such price is fixed by law, the Postmaster-General shall have the power to determine the same.” (Act 1856, sec. 5.)
The case depends upon the single question whether this fifth section furnishes some of the terms and conditions intended by the act of 1864.
The purpose of the act of 1864 was to confer upon a private corporation an enormous grant of public lands in consonance with the policy of the times. All that it is entitled to in the way of interpretation is that it shall be fairly construed, so as to confer'upon the grantees all the benefits which are plainly indicated by its provisions.
In the act of 1856 there appear, following the clause which created the grant, “seven substantive provisions,” as they have been termed by counsel, the last of which, above quoted, is that the mails shall be transported at such price as Congress may by law direct.
The act of 1864, in like manner, declares a grant to the State, and declares it to be upon the terms and conditions contained in the act of 1856, and then follows these substantive provisions, some with modifications and some without, down to the seventh, as to which the act of 1864 is wholly silent.
It should be understood that the grant made by the act of *465 1856 is declared in its first section; tbat tbe first of tbe substantive provisions is to be found in a proviso to tbat section, and tbat tbe remaining substantive provisions appear in succeeding sections, tbe seventh being tbe fifth section of tbe act. In tbe act of 1864 tbe grant for this road is declared by tbe third section; tbe first substantive provision appears in tbe sixth, and tbe other five in succeeding sections.
On these statutory facts, it is contended by tbe counsel for tbe claimant tbat under a canon of construction, peculiarly applicable to land grants, words must be understood as used “in reference to tbe particular subject-matter in tbe mind of tbe legislature and to it only,” and tbat tbe specific subject-matter in tbe legislative mind at tbe time when tbe third section of tbe act of 1864 was framed was “tbe terms and conditions” to be found in tbe corresponding section of tbe act of 1856; tbat is to say, in tbe section which makes tbe grant — tbe first. It is therefore contended tbat tbe court can not search tbe succeeding sections for terms and conditions wherewith to satisfy tbe language or requirement of tbe third section.
Tbe first section of tbe act' of 1856 consists of tbe enacting clause and three provisos. Tbe third section of tbe act of 1864 is a repetition of tbe other (with changes of names and a few unimportant modifications of language), so far as it goes. Tbat is to say, it uses tbe same language, mutatis mutandis, and makes the same provisions up to a certain point, which is at tbe end of tbe first proviso, and there it stops. Beyond tbat point are two provisos, which contain tbe only matter not found in tbe third section of tbe act of 1864. In other words, if tbe reference to tbe same “ terms and conditions ” contained in tbe act of 1856 is to be satisfied by restricting it to tbe first section of tbat act, those terms and conditions must be found exclusively in tbe two following provisos:
“Provided further, (1) Tbat tbe lands hereby granted shall be exclusively applied to tbe construction of that road for which it is granted and selected; (2) and shall be disposed of only as tbe work progresses; (3) and tbe same shall be applied to no other purpose whatsoever.”
11 And provided further, Tbat any and all lands reserved to tbe United States by any act of Congress for tbe purpose of aiding in any object of internal improvement, or in any manner, for any purpose whatsoever, be, and the same are hereby, reserved to tbe United States from tbe operation of this act, *466 except, so far as it maybe found necessary to locate the route of said railroad through such reserved lauds, in which case the right of way only shall be granted, subject to the approval of the President of the United States.”
The first clause of the first of these provisos furnishes no terms and conditions. The act of 1856 was “to aid in the construction of railroads,” and the first clause of the proviso merely restricts the benefits by requiring that the land granted “ shall be exclusively applied in the construction of that road for which it was granted and selected;” the third seetiou of the act of 1864 relates to a single designated road.
The second clause furnishes no terms and conditions, for the seventh section of the act of 1864 provides specifically that the lands granted shall be disposed of. The third furnishes no terms and conditions, for it is repeated in the eighth section of the act of 1864.
The second of these provisos furnishes no terms and conditions, for it is to be found, word for word, in the sixth section of the act of 1864. In a word, the third section of the act of 1864 follows the first section of the act of 1856, clause by clause, until the-first of the two provisos above quoted is reached, which, being inapplicable to the subject-matter of the enactment, is dropped, while the second of the two is transferred bodily to the latter statute and made the sixth section. If the construction contended for be given to the statute, not a single term or condition will be imported and made a part of it by the reference to the act of 1856.
Conceding that, of the seven substantive provisions found in the act of 1856, six corresponding ones are to be found in the act of 1864, and, in the words of counsel, that “ three of those six contradict provisions in the act of 3856, three are repetitions of the provisions of the act of 1856; while the seventh, being the mail-transportation provision in the fifth section of that act, is entirely omitted from the act of 1864 and dropped;” and that “one of the substantive provisions in the act of 1856 which are repeated and expressly reenacted in the latter act is that reserving to the United States the use of the roads for the transportation of its property and troops free of toll or other charge,” the statutory facts still remain that the construction contended for will reduce the clause of reference now under consideration to a piece of blank paper, expressing much and enacting nothing.
*467 In substantially all cases of statutory obscurity or ambiguity there is a deficiency of expression, an ellipsis, in which a court must supply, by construction, the words necessary to express the legislative intent. We have here a statute saying that a grant is made “upon the same terms and conditions as are contained in the act” of1856. To attain» a practical result one of two readings must be adopted: Either we must read that the land spoken of is granted “upon the same terms and conditions as are contained in the act of 1856, including the fifth section thereof ” or else that the land spoken of is granted “not upon the same terms and conditions as are contained in the act of 1856, but only upon the terms a/nd conditions expressly prescribed by this, the act of 1864.” In other words, if the construction for which the claimant contends should be adopted, it would be giving to the statute, by interpretation, a meaning directly the reverse of that which its language expresses.
Moreover, the very able arguments which have been directed against the act of 1856 as a whole apply with even greater force to its first section. They, in effect, maintain that Congress, when framing the act of 1864, took three of the “seven substantive” provisions, changed them, modified them, and inserted them in the new statute; that Congress then took three more of the seven and reenacted them without change or modification, but that when they came-to the seventh, the section relating to the transportation of the mails, they dropped it, neither modifying nor reenacting it. Hence, that the reference to the terms and conditions must have been intended to be to the terms and conditions of the first section of the act of 1856, and not to the statute at large. But in precisely the same manner the third section of the act of 1864 passes through the first section of the previous act, taking from the enacting clause every provision which it contains, modifying one, repeating another, until the first proviso is reached. Then it adopts this first proviso as a proviso, changing only a single word; and then it stops and is silent as to the second and third provisos, before quoted. It is, therefore, manifest that the rule of construction, when applied to the-first section of the act of 1856, leaves the reference clause in the act of 1864 even more inoperative than it was before.
It is most undesirable that a public measure shall mean one thing when it is a bill before Congress and another when it is *468 a statute before the judiciary. Canons of construction which may lead to this result are to be shunned. In the present instance, the terms and conditions which exact that “ the United States mail shall be transported over said roads, under the direction of the Post-Office Department, at such price as Congress may direct,” could be read into the act of 1864 by any person of ordinary comprehension while it was still a pending bill; but it requires a good lawyer and an able argument to read the provision out of the statute.
The construction given to the act by the Post-Office Department and the decision of the Supreme Court in the Alabama and Great Southern R. R. Co. Case (142 U. S. R., 675) have been pressed upon the attention of the court by counsel and have been duly considered.
A contemporaneous and long-standing construction given to a statute by an Executive Department is to be treated with great respect, and is not to be overturned unless the legislative intent clearly and unmistakably requires that it be disregarded. But in the present case there has not been such a construction given to this statute, and if there had been, no injury was done thereby to the claimant in such a sense as should prevent the proper construction horn now being given. Where an Executive Department, charged with the administration of a law, gives to it an interpretation upon the faith of which the other party acts, a manifest wrong and injury will be caused by a subsequent judicial interpretation which leaves the party without redress. In the case of the Alabama and Great Southern Eailroad Company the service was voluntary;’ and if the construction for which the law,officers of the Government had contended had been asserted by the Post-Office Department at the proper time the railroad might have declined the service. The action of the Department did not constitute an estoppel, nor close the eyes of the'court to see the true construction of the act, but it furnished a very strong reason for upholding, if possible, the construction upon the faith of which both parties had acted. In the present case the claimant had no option; as a land-grant road it had to perform this service, and to perform it upon the terms prescribed by Congress. If the Postmaster General had given the same construction to the statute which the court now gives, the claimant could not have said, “We decline to perform, because *469 tbe terms are not satisfactory to us and tbe remuneration is insufficient.” Tbe only effect wbicb tbe misinterpretation of tbe Post-Office Department bas caused is that tbe claimant^ by reason of overpayment, bas bad in its possession money wbicb it was not entitled to have, and that it bas bad it without tbe payment of interest.
When these points are passed, tbe case is ruled by tbe decision of this court in tbe case of Duval (25 C. Cls. R., pp. 46-69). Tbe claimant is entitled to recover for tbe moneys withheld from it because of overpayments made to tbe Phillips & Colby Construction Company, prior to tbe time when it, tbe claimant, obtained possession of tbe road and became a mail-carrier for tbe Post-Office Department.
Tbe judgment of tbe court is that tbe claimant recover of tbe defendants tbe sum of $6,448.80.